UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NEW VISION GAMING & DEVELOPMENT, INC., <br><br> Plaintiff, <br><br> v. <br><br> LNW GAMING, INC., <br><br> Defendant. | Case No. 2:17-cv-01559-APG-BNW <br><br> **ORDER** |

Before this Court is Defendant LNW Gaming's Motion to Compel. ECF No. 108. Plaintiff New Vision opposed at ECF No. 112. LNW's Reply is at ECF No. 115.

On June 2, 2017, New Vision filed a complaint in this case, which included claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, accounting, and declaratory relief. ECF No. 1. LNW answered with both defenses and counterclaims, including noninfringement, patent invalidity, patent misuse, recission and restitution, waiver or estoppel, no consideration, fraudulent and/or negligent misrepresentation in the inducement, mistake, and breach of contract and warranty. ECF No. 7.

The question before the Court is whether the responsive documents to Defendant's Request for Production ("RFP") No. 10 are protected by the attorney privilege and whether they should be produced prior to Mr. Feola's *de bene esse* deposition. The parties are familiar with their respective arguments. As a result, this Court only includes them as relevant to its Order.

The Court finds that New Vision has waived the attorney-client privilege as to the responsive documents encompassed by RFP No. 10. Given this, New Vision is ordered to produce responsive documents to RFP No. 10.[1] Lastly, given this finding, the Court need not reach the issue of the privilege log.

---

[1] The Court notes there have been no arguments raised regarding the scope of the waiver or work-product.

## I.     ANALYSIS

RFP No. 10 seeks,

> "[a]ll documents relating to John Feola's statement in the Declaration of John Feola in Support of Plaintiff's Partial Motion for Summary Judgment that Steve Martin was asked to 'review the rules for the 6-Card Bonus Wager on the Three Card Poker game' and that 'Mr. Martin concluded that the 6-Card Bonus Wager as implemented on the Three Card Poker game infringed the 7,451,987 patent and that New Vision had a legal claim against Bally.'"

ECF No. 108 at 5.

New Vision objected on the grounds that the request is "Overly Broad, and…Seeking Privileged Information." *Id.* New Vision did not lodge a relevance objection. As such, it is waived.[2] *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir.1992) ("It is well established that failure to object to discovery requests within the time required constitutes a waiver of any objection"). In addition, Plaintiff's response to the Motion does not suggest it is standing on the overbreadth objection. As a result, the only objection that requires a ruling is the attorney-client privilege objection.

The attorney-client privilege protects confidential disclosures made by a client to an attorney to obtain legal advice and an attorney's advice in response to such disclosures. *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir.1996). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). It serves to protect confidential communications between a party and its attorney in order to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* "Because it impedes the full and free discovery of the truth,

---

[2] The Court notes that Plaintiff argues in its opposition that LNW does not explain how the privileged documents are relevant to any of the claims or defenses. As mentioned above, Plaintiff never lodged such an objection, thereby waiving it. In addition, as explained in this Order, the documents are relevant to LNW's non-infringement defense and to the ultimate characterization of the agreement.

1  the attorney-client privilege is strictly construed." *Weil v. Investment/Indicators, Research and Management, Inc.*, 647 F.2d 18, 24 (9th Cir.1980). The party asserting the attorney-client privilege has the burden of proving the attorney-client privilege applies. *Id.* at 25. "One of the elements that the asserting party must prove is that it has not waived the privilege." *Id.*

The doctrine of waiver of the attorney-client privilege is "rooted in notions of fundamental fairness." *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir.1996). "Its principal purpose is to protect against the unfairness that would result from a privilege holder selectively disclosing privileged communications to an adversary, revealing those that support the cause while claiming the shelter of the privilege to avoid disclosing those that are less favorable." *Id.* at 340-41 (citing 8 J. WIGMORE, EVIDENCE § 2327, at 636 (McNaughton rev.1961)). Stated differently, the doctrines that "protect[ ] attorney-client communications may not be used both as a sword and a shield." *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992).[3]

The safeguards afforded by virtue of the attorney-client privilege are forfeited when a party, during litigation, (1) makes an affirmative act injecting privileged materials into a proceeding, (2) thereby putting the materials at issue, (3) where application of the privilege would deny the opposing party access to information needed to effectively litigate its rights in the adversarial system. *United States v. Amlani*, 169 F.3d 1189, 1195 (9th Cir. 1999) (quoting *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995)).

**A.    New Vision made an affirmative act injecting privileged materials into the proceeding, thereby putting materials at issue**

The record is clear that New Vision included a declaration by Mr. Feola in its Motion for

---

[3] The Court agrees with LNW that the issue of waiver is not confined to situations in which the defense of counsel is asserted. Instead, the waiver doctrine is much broader. *Gomez v. Vernon*, 255 F.3d 1118 (9th Cir. 2001)("privilege may be waived by the client either implicitly, by placing privileged matters in controversy, or explicitly, by turning over privileged documents."); *U.S. ex rel. Parikh v. Premera Blue Cross*, No. C01-0476MJP, 2006 WL 6654604 (W.D. Wash. Oct. 31, 2006)("A party may not selectively disclose privileged communications that it considers helpful while claiming privilege on damaging communications relating to the same subject.").

Partial Summary Judgment that refers to his communications with counsel. ECF No. 28-1, ¶ 4. One of the issues in that Motion was whether the Court should grant summary judgment on the breach of contract claim and whether that contract should be characterized as a "settlement agreement" or a "licensing agreement."[4] *See generally* ECF Nos. 28, 33, 34. Thus, there is no question that New Vision made an affirmative act. But the parties take different positions as to whether Mr. Feola injected privileged communications into the proceeding (such that the Court should find waiver regarding documents encompassed or giving rise to that communication).

In general, disclosing that legal counsel was consulted, the subject of the matter as to which advice was received, or that action was taken based on that advice, does not necessarily waive the privilege protection. *Melendres v. Arpaio*, No. CV-07-2513-PHX-GMS, 2015 WL 12911719 (D. Ariz. May 14, 2015). In addition, describing the due diligence process, without disclosing the substance of the advice, is not a waiver. *U.S. Ethernet Innovations LLC v. Acer Inc.*, No. C 10-03724 CW (LB), 2014 WL 3570749, at *3 (N.D. Cal. July 17, 2014).

The declaration at issue states:

> To verify my belief [that Bally was infringing on one of my patents], not long after my visit to Atlantic City, I contacted my patent attorney, Mr. Steve Martin, and requested him to review the rules for the 6-Card Bonus Wager on the Three Card Poker game. Mr. Martin concluded that the 6-Card Bonus Wager as implemented on the Three Card Poker game infringed the 7,451,987 patent and that New Vision had a legal claim against Bally.

ECF No, 28-1, ¶ 4.

New Vision relies on both *Melendres* and *Ethernet* for the proposition that the paragraph in question is merely "confirmation of due diligence and reporting the decisions made." ECF

---

[4] According to Defendant LNW, if the agreement is deemed to be a "license agreement," New Vision cannot recover from LNW any license fees that were due under the Agreement after LNW notified New Vision in 2017 of LNW's belief that the 806 and 987 patents were invalid. ECF No. 108 at 2. If deemed a "settlement agreement," then New Vision's claims for post-notice license fees potentially are viable (subject to LNW's remaining defenses to New Vision's claims). *Id.*

4

No. 112 at 8. But the statements at issue in those cases are very different from the statement here.

Unlike the *Melendres* case, Mr. Feola did more than disclose that legal counsel was consulted, the subject of the consultation, and that action was taken based on that advice. Mr. Feola explicitly stated his attorney's conclusion that Bally had infringed on New Vision's patent and that this gave rise to a claim. *Electro Scientific Indus., Inc. v. General Scanning, Inc.*, 175 F.R.D. 539, 543 (N.D.Cal.1997) (finding that the attorney-client privilege was waived where the attorney's conclusion had been voluntarily disclosed even if the details accompanying such conclusion were not provided).

*Ethernet* is likewise distinguishable. There, the court determined there had been no waiver because the statement was descriptive of the process involved in due diligence—and not the substance of due diligence. Here, even if this Court were to agree with New Vision's characterization of this statement as one involving only due diligence, the statement goes to the substance of due diligence—not the process. In addition, Mr. Feola's statement included the advice given to him by his attorney about (1) the infringement (and presumably, the validity) of the patent and (2) the claims that arose from such infringement. *But see Ethernet*, 2014 WL 3570749 at *2 (Plaintiff's CEO did not appear "to be testifying about legal advice given to him by his attorney about the validity of the patents. He was not describing legal advice or confidential information provided to him by his attorneys.")

Here, the Court agrees with LNW that New Vision "took affirmative steps to put the privileged communications—including the conclusions drawn from those communications—at issue." ECF No. 115 at 6. This is especially so given that Mr. Feola did not need to include the conclusions of his attorney that the games "infringed" on the patents, giving rise to "claims," in order to present its summary judgment motion as to the breach of contract claim (and the questions surrounding the characterization of the agreement). The court agrees with LNW that he did so to bolster its claim. By doing so, Plaintiff put the statement at issue.

### B. Application of the privilege would deny Defendant LNW access to information needed to effectively litigate its rights in the adversarial system

The declaration contains the imprimatur of an attorney's conclusion that Defendants infringed on New Vision's patent. As New Vision states, the requests at issue are "premised on whether any dispute exists as to the reasonableness of New Visons' infringement position." ECF No. 112 at 11. And, despite New Vision's position to the contrary, LNW indeed has asserted non-infringement as a defense. Not having access to the background giving rise to such conclusion would impede LNW from effectively presenting its defense. LNW should be able to question Mr. Feola at his *de been esse* deposition as to whether his attorney considered all information, including any contradictory information, to see whether his opinion was well-founded. The Court agrees that LNW should be able to determine what Mr. Feola actually asked Mr. Martin, how Mr. Martin responded, the basis for Mr. Martin's conclusion that LNW infringed the licensed patent, whether Mr. Martin qualified his opinion, whether Mr. Martin's opinion was detailed enough to justify Mr. Feola's reliance on it, and how this communication ultimately led (or did not lead) to the Agreement at the center of this case. ECF No. 108 at 9.

Lastly, the statement concluding that New Vision has legal claims against Defendants is relevant to whether the agreement is a settlement agreement or a licensing agreement. LNW is entitled to probe such conclusion.

The Court is especially mindful of the fact that, practically speaking, New Vision is Mr. Feola. In addition, Mr. Feola's health is failing. Thus, the *de bene esse* deposition may be the only chance LNW has to preserve this testimony prior to trial.

## II. CONCLUSION

**IT IS ORDERED** that Defendant LNW's motion at ECF No. 108 is GRANTED.

**IT IS FURTHER ORDERED** that New Vision must produce the response to RFP No. 10 within 10 days of this Order.

**IT IS FURTHER ORDERED** that the parties must meet and confer within 5 days of this Order and agree on a mutually agreeable date for the *de bene esse* deposition. Such

deposition is to take place within 45 days of this Order.

DATED this 2nd day of October 2023.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE

7