UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NEW VISION GAMING & DEVELOPMENT, INC., <br><br> Plaintiff <br><br> v. <br><br> LNW GAMING, INC. <br><br> Defendant | Case No.: 2:17-cv-01559-APG-BNW <br><br> **Order Granting Plaintiff's Motion to Dismiss Counterclaims** <br><br> [ECF No. 160] |

This is a dispute over the parties' obligations under a licensing agreement for royalties stemming from two patents: United States Patent Nos. 7,325,806 ('806 patent) and 7,451,987 ('987 patent). In 2014, plaintiff New Vision Gaming & Development Co. and defendant LNW Gaming Co.[1] entered into a license agreement for the patents, which cover a six-card bonus bet for three-card poker. ECF No. 7 at 10. Under this agreement, New Vision warranted that to the best of its knowledge, "there are no pending or threatened, nor any basis therefore, litigation claims against the Patents, or against [New Vision] which could materially adversely affect the Patents or [LNW]'s rights under this Agreement" and "all claims of the Patents are valid and enforceable." ECF No. 24 at 8.

LNW paid royalties under the agreement from May 2014 through November 2016. ECF No. 7 at 13. In February 2017, three months before the end of the initial term under the agreement, LNW informed New Vision that LNW was exercising its right to terminate and would no longer pay royalties. *Id.* In August 2017, LNW told New Vision it believed that the '806 and '987 patents were invalid and that LNW would stop paying royalties. *Id.*

---

[1] LNW Gaming Co. has changed its name twice during the pendency of this suit. It was formerly known as Bally Gaming, Inc. and SG Gaming, Inc.

After LNW exercised its termination rights and stopped paying royalties under the agreement, New Vision filed this lawsuit. New Vision alleged claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, accounting, and declaratory relief. ECF No. 1. LNW counterclaimed, asserting claims for a declaration of patent invalidity, material breach of contractual warranties, mistake, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and declaratory relief. ECF No. 14.

In June 2018, I dismissed without prejudice LNW's breach of contractual warranties and implied covenant counterclaims because LNW did not plead facts that plausibly put New Vision on notice that the patents were invalid or subject to adverse litigation. ECF No. 40 at 3-4. I dismissed with prejudice LNW's request for restitution for the royalties it paid under the licensing agreement before it challenged the patents' validity because the remedy was unavailable as a matter of law. *Id.* at 6.

In November 2018, before the parties' deadline to amend pleadings, I stayed the case until the conclusion of the '806 and '987 patent invalidity proceedings before the U.S. Patent Trial and Appeal Board (PTAB). ECF No. 82. In June 2019, the PTAB found both patents invalid for claiming patent-ineligible subject matter. *See* ECF Nos. 87, 88. New Vision appealed the decisions to the Federal Circuit but later voluntarily dismissed one of the appeals. *See* ECF No. 133. The Federal Circuit affirmed the PTAB's decision regarding the invalidity of the remaining patent in January 2024. *See id*. I then lifted the stay and LNW was allowed to amend its counterclaims. ECF Nos. 144, 145, 148, 158, 159.

LNW now alleges counterclaims for breach of contractual warranties, mistake, unjust enrichment, breach of the implied covenant of good faith and fair dealing, declaratory relief, and fraudulent or negligent inducement. ECF No. 162-1 at 18-22. New Vision moves to dismiss

LNW's counterclaims for breach of contractual warranties, breach of the implied covenant, and fraudulent or negligent inducement. ECF No. 160.  New Vision argues these claims fail because it did not know the patents were invalid at the time it signed the agreement.

I grant New Vision's motion and dismiss the challenged counterclaims without prejudice. LNW has not plausibly alleged that New Vision knew or should have known of the patents' alleged invalidity when it signed the agreement.  And restitution for royalties remains foreclosed as a matter of law unless LNW amends its complaint to plausibly plead a fraud claim.

I.      **MOTION TO DISMISS**

In considering a motion to dismiss, "all well-pleaded allegations of material fact are taken as true and construed in a light most favorable to the non-moving party." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  However, I do not assume the truth of legal conclusions merely because they are cast in the form of factual allegations in the complaint. *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  A plaintiff must make sufficient factual allegations to establish a plausible entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  Such allegations must amount to "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." *Id.* at 555.

New Vision argues that each counterclaim must be pleaded with particularity under Federal Rule of Civil Procedure Rule 9(b) because they sound in fraud.  LNW does not oppose this argument.  Pleading with particularity requires LNW to state the "who, what, when, where, and how" of the misconduct charged. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

### A. LNW's Fraudulent or Negligent Inducement Claim Fails Because It Does Not Plausibly Allege Facts to Show New Vision Had Knowledge of Patent Invalidity When It Entered the Agreement.

To state a claim for fraud in the inducement, LNW must plausibly allege (1) New Vision made a false representation; (2) New Vision believed or knew that the representation was false (or knew that it had an insufficient basis for making the representation); (3) New Vision intended the false representation to induce LNW to consent to the contract's formation; (4) LNW justifiably relied on the misrepresentation; and (5) LNW was damaged as a result of such reliance. *J.A. Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).

LNW alleges New Vision knew the patents were invalid when the parties entered the agreement and warranting otherwise was a fraudulent misrepresentation. New Vision argues it did not know the patents were invalid at the time and it relied on the statutory presumption of validity provided by 35 U.S.C. § 282.[2] LNW responds that regardless of the presumption, New Vision knew the patents were invalid when the parties signed the agreement based on (1) a 2009 lawsuit that challenged the '987 patent; (2) an email from the plaintiff in that 2009 lawsuit that alleged prior art invalidated the '987 patent; (3) the existence of another patent New Vision owned, Patent No. 6,702,289 ('289 patent); (4) the existence of Pai-Gow Mania, an online game hosted on New Vision's website; and (5) the text of 35 U.S.C. § 101.

LNW first points to a 2009 legal challenge to the '987 patent's validity by Brunn Consulting Group. That case was settled and dismissed without a decision on the merits. *See Brunn Consulting Grp., Inc. v. Feola*, No. 09-CV-2046-BEN (S.D. Cal. Dec. 16, 2009). As I

---

[2] Section (a) of the statute provides that a "patent shall be presumed valid. . . . The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."

4

ruled previously on this argument, LNW has not adequately pleaded facts to show that the 2009 lawsuit gave New Vision knowledge the '987 patent was invalid. That case was dismissed based on a settlement between the parties. If simply having a lawsuit filed against it were sufficient to show knowledge, even completely frivolous suits could result in patent holders making fraudulent misrepresentations about the validity of their patents, which would be an absurd result. LNW alleges no new facts to show why that lawsuit plausibly put New Vision on notice of the '987 patent's invalidity.

Second, LNW relies on an email written by Andy Brunn, the plaintiff in the 2009 litigation, which listed six patents which he felt invalidated the '987 patent based on obviousness, anticipation, and lack of novelty. ECF No. 162-1 at 50 (stating that "below are some of the ones which we feel invalidate your patents" (emphasis omitted)). But the email did not analyze how any of the six patents were similar to the '987 patent, and no court ruled on the merits of these assertions. LNW has not adequately pleaded facts to show why this email plausibly informed New Vision of the '987 patent's invalidity where it summarized only an unverified feeling of invalidity from a litigation opponent.

LNW next argues that the preexisting '289 patent, which included rules for a "bonus" bet, is an obvious invalidating prior art that put New Vision on notice of the '987 patents' invalidity. *See id.* at 31-43. However, as I ruled previously, LNW still alleges no facts to show that this prior art was not provided to the United States Patent and Trademark Office (PTO) in the '806 and '987 patent applications, that the patent examiners missed this allegedly invalidating prior art, or any other reason the existence of this patent put New Vision on notice that its presumptively valid patents were in fact invalid. LNW alleges no new facts to show why the

5

mere existence of this patent was sufficient to put New Vision on notice that its patents were invalid.

LNW next points to the online Pai-Gow Mania game as obvious and/or anticipating prior invalidating art. That game, like the '987 patent, included rules involving a "bonus" bet. *See id.* at 48, 52, 54-55. At least one year before applying for the '987 patent, New Vision hosted the Pai-Gow Mania game on its website. But as with the '289 patent, LNW does not plausibly allege why the mere existence of this game put New Vision on notice that its patents were invalid, given the statutory presumption of validity. LNW does not allege the PTO failed to observe and factor this game into its initial validity determination and does not present facts as to why New Vision could not have relied on the PTO's determination.

Finally, LNW points to the text of 35 U.S.C. § 101, which provides the standard for patentable subject matter.[3] LNW alleges New Vision knew of this standard and therefore knew its patents could be invalidated, yet New Vision did not disclose this during negotiations. New Vision once more argues it relied on the statutory presumption of validity. LNW has not adequately pleaded facts showing why or how New Vision knew its presumptively valid patents would be adjudicated invalid based on the existence of § 101. It does not plausibly show that New Vision understood or should have understood this statute to overcome the presumption of validity.

LNW's allegations individually and collectively do not plausibly allege facts showing New Vision was on notice of the patents' invalidity at the time the parties entered the agreement. Therefore, I dismiss LNW's fraudulent or negligent inducement claim without prejudice.

---

[3] The statute provides, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."

6

**B. LNW's Breach of Contractual Warranties Claim Does Not Plausibly Allege Facts to Show New Vision Did Not Act to the Best of Its Knowledge When It Entered the Agreement.**

LNW asserts a counterclaim for breach of contractual warranties against New Vision. To state this claim, LNW must plausibly allege that (1) a warranty existed; (2) New Vision breached the warranty; and (3) New Vision's breach proximately caused a loss. *Nev. Contract Servs., Inc. v. Squirrel Cos., Inc.*, 68 P.3d 896, 899 (Nev. 2003) (per curiam).

LNW alleges New Vision breached the express warranties in the agreement that there were no adverse litigation claims or a basis for claims against the patents and that the patents were valid. New Vision contends it acted to the best of its knowledge[4] when it warranted the patents' validity and although the patents are now declared invalid, it did not breach these warranties. This claim relies on the same allegations as the fraudulent or negligent inducement claim, and the parties' arguments are essentially the same. Thus, my analysis above applies to this claim as well, and I dismiss it without prejudice.

**C. LNW's Breach of the Implied Covenant of Good Faith and Fair Dealing Claim Does Not Plausibly Allege Facts to Show New Vision Did Not Act in Good Faith.**

"Where the terms of a contract are literally complied with but one party to the contract deliberately countervenes the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).

---

[4] "Knowledge" is defined in the agreement as "the actual state of knowing a thing or fact; or that knowing which can or should be reasonably imputed, including a use of reasonable due diligence, inquiry and/or investigation; or a thing or fact which, after reasonable due diligence, inquiry and/or investigations, should be known." ECF No. 24 at 10.

7

1   LNW alleges New Vision breached the implied covenant by its "misrepresentations,
2   nondisclosures, and breaches of warranty." ECF No. 162-1 at 21.  This claim relies on the same
3   allegations as the fraudulent or negligent inducement claim, and the parties' arguments are
4   essentially the same.  Thus, my analysis above applies to this claim as well, and I dismiss it
5   without prejudice.

6           **D.   Restitution Remains Foreclosed as a Matter of Law Because LNW Did Not**
7               **Plausibly Allege a Fraud Claim.**

8   Generally, a patent licensee cannot recoup royalties paid before it affirmatively declares
9   its belief that the patent is invalid or otherwise seeks a determination of the patent's invalidity.
10  *Bristol Locknut Co. v. SPS Techs., Inc.*, 677 F.2d 1277, 1283 (9th Cir. 1982); *Rite-Nail*
11  *Packaging Corp. v. Berryfast, Inc.*, 706 F.2d 933, 936-37 (9th Cir. 1983).  Accordingly, I
12  previously dismissed with prejudice LNW's request for royalties paid before it challenged the
13  validity of the patents.
14  However, an exception to this rule "occurs when a patent holder has induced the licensee
15  to enter into the license agreement through fraud; in such event, the licensee is entitled to
16  restitution of his royalty payments." *Farnam Cos, Inc. v. Stabar Enters., Inc.*, No. CV05-
17  1520PHXNVW, 2005 WL 3334348, at *3 (D. Ariz. Dec. 8, 2005) (quoting *Transitron Elec.*
18  *Corp. v. Hughes Aircraft Co.*, 649 F. 2d 871, 874 (1st Cir. 1981)).  In its amended counterclaims,
19  LNW brings a new claim for fraudulent or negligent inducement and requests restitution of all
20  royalties paid to New Vision.  Although LNW fails to plead fraud at this juncture, restitution
21  may be available if it amends its claim to plead facts that plausibly allege fraudulent inducement.
22  Because LNW does not now plead a valid fraud claim, restitution of royalties paid before LNW
23

challenged the validity of New Vision's patents remain foreclosed as a matter of law. I therefore dismiss this request without prejudice.

## II. CONCLUSION

I THEREFORE ORDER that New Vision Gaming and Development, Inc.'s motion to dismiss **(ECF No. 160) is GRANTED**. LNW Gaming, Inc.'s counterclaims for fraudulent and negligent inducement, material breach of warranties, and breach of the implied covenant of good faith and fair dealing are dismissed without prejudice. LNW's request for the refund of royalties paid before it notified New Vision of its challenge to the patents' validity is also dismissed without prejudice.

I FURTHER ORDER that defendant LNW may file an amended complaint, if sufficient facts exist, by November 17, 2025.

DATED this 27th day of October, 2025.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE